Good morning, Your Honors, and may it please the Court. My name is Stephen L. Braga, and it is certainly my pleasure to have been appointed by the Court to represent Vanessa Lynn Gibson, also known as Scott Lynn Gibson, before this Court this morning. Ms. Gibson is a transgender inmate housed in the Texas state correctional system. She has been diagnosed with gender dysphoria. Vanessa, we have read the briefs and we know what the case is about, so why don't you go ahead and move to what legal points you want to present. Certainly, Your Honor. To support Ms. Gibson's Section 1983 claim below, she had to satisfy two elements. First element, that she had a serious medical need. As explained in the briefs, the state does not contest that point with respect to Ms. Gibson, that her gender dysphoria is a serious medical need. That's on page 11 of the supplemental brief. And so the remaining element that Ms. Gibson had to prove to get by summary judgment below was deliberate indifference to her care by the Texas state correctional facilities. Before you get to that deliberate indifference prong, I just want to confirm that the understanding that you refer to your brief as a supplemental brief, but actually it's the substituted brief. We don't look at Gibson's pro se brief. That's history. Same with the state's initial brief. All we're looking at is your brief, the state's response, and then your reply. Understood, Your Honor. Right. Okay. Um, so the issue came down to deliberate indifference. The summary judgment ruling against Ms. Gibson was on a very sparse record. The state moved for summary judgment. They introduced three exhibits. Number one, they introduced Gibson's grievance records at the prison. Number two, they introduced Gibson's medical records at the prison. Number three, they introduced the policy for dealing with transgender health care issues, which is Texas Department of Criminal Justice Policy G-51.11. The state introduced no evidence of the rationale behind the adoption of that policy. That's critical because the Section 1983 claim made by Gibson is tied to her allegation that under that policy, she is not allowed to be evaluated for a potentially medically necessary part of her treatment for gender dysphoria. That's where I have a question because it's my understanding on, and this is a sparse record and I'm not certain at times whether reference in the briefs as to what's in the record or what they wish had been in the record, but I understood, again I'm certainly subject to being wrong, that Dr. Green referred or stated he wanted Gibson evaluated for this SRS sexual reassignment surgery. Now is that in the record or not? I don't believe that's in the record, Your Honor. I'm not familiar with that fact. Mr. Sullivan may be able to correct me. In any event, whether she was referred or not, the record does seem clear that she has never had an evaluation for SRS, the sexual reassignment surgery. Well, I understand. But if — but at least it's not as cut and dried if Dr. Green requested or referred for SRS evaluation. I don't know what might have happened after that, but it might not be as cut and dried as you're presenting in your brief and in your argument here. That's correct, Your Honor. If there had been a referral for SRS, that would be an entirely different picture. No. A referral for SRS evaluation. Correct. Yes. Correct. Again, I'm not aware of that fact, but if there had been that fact, if Mr. Sullivan corrects me when he gets up in his argument, I'll be happy to address it in a rebuttal. I don't think that's our fact pattern. I think our fact pattern, as demonstrated by the record, particularly the three different affidavits submitted by Gibson, which is another part of the evidence on summary judgment, is that she repeatedly requested an evaluation for SRS and was told that it would not be done because the policy did not provide for SRS as a potential treatment. The — Does the record — excuse me — does the record reflect whether any prison has ever or how often prisons have provided SRS to inmates? The record does not reflect that, Your Honor. So in terms of deliberate indifference, the prison has provided Mr. Gibson with substantial hormonal treatment. Isn't that right? That's correct. I mean, I have a hard time seeing how that rises to the level of deliberate indifference because, as you know, the deliberate indifference standard doesn't require that maximum medical treatment or the best possible medical treatment be provided, even assuming that it's deemed to be necessary. That's correct, Your Honor. And so what we have here is not a question of an alternative treatment or an optimal treatment versus a generic treatment. When you look at the WPATH standards, which are the only standards out there in the world for transgender health, when you look at the DSM, which has been recognized by the Supreme Court as authoritative in Moore v. Texas and others, both of those recognize that in some cases — the key word, some cases — SRS can be medically necessary. That's the issue that needs to be evaluated here with an evaluation of Gibson for whether she is one of those cases that SRS might be medically necessary. It is absolutely true, Your Honor, and the Texas Department of Criminal Justice is to be commended for moving forward with its policy from the time of Praler, when Judge Barksdale was on the opinion, to today, where they do give hormone therapy. But if on the graduated — No, but my point — I mean, I'm interrupting you, but excuse me, I think you can get back to your train of thought, but it seems to me that that's the essence of deliberate indifference that doesn't — that doesn't appear here. That is to say, it can't be the case that the prison authorities just don't care or have paid no attention or are completely disparaging of any kind of complaint here. They've taken substantial and unusual steps to take care of the issue. How can that be deliberate indifference in any common-sense meaning of the term? It's not deliberate indifference at a 30,000-foot general level, Your Honor, but it is deliberate indifference if it ignores the people on the far end of the spectrum, those small class of cases for whom SRS is, quote, medically necessary in the — But is — does — my understanding was from the briefs that the record reflects that there is no longer a threat of suicide. Is that — is that a fair representation? I don't believe that's anywhere in the briefs, Your Honor. It is true that the record reflects, and we've candidly admitted, that Ms. Gibson has gotten some relief from her hormone therapy. However, her affidavits make it very clear that she believes she needs to be evaluated for SRS, that she believes her symptoms are ongoing, and that's reflected by the affidavits and, in fact, also by the medical records and the grievances filed in the case. But he — but he no longer claims that he's suicidal, isn't that right? I do not see that anywhere in the record, Your Honor. I believe that there has been a period of time now, for sure, three years or more, where Gibson has not attempted suicide, but the affidavits reflect that she still does have suicidal thoughts and she still does want to self-castrate because of her gender dysphoria. I frankly would tell you that, you know, it may be that she realizes she has a case winding its way through the court system that's given her some comfort, and there's nothing in the record to reflect that her suicidal tendencies or suicidal thoughts are gone. Back to the question of deliberate indifference, Your Honor, it's — it cannot be the case that if there is — assume with me — if there is a four-part standard of care — mental health counseling, real-life experience, hormone therapy, SRS — and if that's a graduated spectrum of care, and some people with gender dysphoria are fixed by the first step, some are fixed by the second step, some are fixed by the third step, but there is a category of patient who's not fixed by those first three steps, and the leading authorities say that for that category of patient that is not fixed, SRS is medically necessary. It cannot be the case that the state, knowing that, can adopt a policy that says, well, we understand that there's some people, maybe only a few in prison, who need SRS to be cured. We're not going to take care of them because we did enough through the first three steps. Your brief, I think, acknowledges — at least, I think, the reply brief acknowledges — that the First Circuit has rejected this argument. The First Circuit has rejected that argument in Koselec. Right. Arguably, the Tenth Circuit has rejected it in Drewley. So I guess my question is, if it's medically controversial in Massachusetts, which is, I think, the subject of the First Circuit en bas case, how is it deliberate indifference in Texas? If you read Koselec closely, and I'm sure Your Honor has, the court goes out of its way at the end of the opinion to emphasize that it's dealing with these unique facts. It's not foreclosing — I mean, your brief acknowledges that the reasoning of the First Circuit is essentially allowing a blanket ban. I think I'm quoting your brief, a blanket ban. And, in fact, we do that by adopting the dissent. You're correct, Your Honor, by adopting the dissent's position. But the — And I think it's because the reasoning of the majority appears to be there's no SRS right, regardless of the individual circumstances. Yeah. I don't know that we went that far in our brief. If we did, that's wrong. The key fact — I'm just — I think your brief talks about Massachusetts being allowed to have a blanket ban. Right. And if you — if we did say that in our brief, that's wrong. When you read Koselec, that's not what it says, and I take responsibility for that. Koselec is tied — Let's go broader, though. I mean, at the end of the day, your case is relying, I think, on this WPATH asserted standard of care. Right? That's your — the core of your case? The core of the case submitted by Gibson below was the WPATH standard of care. But — Doesn't the First Circuit essentially discredit WPATH? It criticizes — Maybe not — maybe discredit's too strong, but it certainly makes the point that WPATH is far from widespread consensus. There are a lot of doctors who strongly disagree with WPATH. I think it would be — it would be fair to say the First Circuit says — recognizes WPATH as an authoritative medical standard, but it doesn't recognize it as having universal consensus. It doesn't agree with everything in it. It's not perfect, for sure, Your Honor. Koselec, though — the most important thing about Koselec is, toward the end of the opinion, the First Circuit recognizes that, in terms of medically necessary, there were conflicting opinions before the court. That's what should happen in this case. Koselec was evaluated. She was evaluated for whether SRS would cure her gender dysphoria. Some of the professionals said it would. Some of the professionals said it wouldn't. That's the kind of record that's important for the Eighth Amendment, because the Eighth Amendment violation, the Eighth Amendment claim, as this Court's precedents say repeatedly, turns on — should turn on individualized medical assessment. I'll definitely grant you the way this case was litigated in the district court is curious, to say the least. So I'll grant you all of that. What would be the point, though, of remand? I mean, if you're saying, under Koselec, it's accepted that WPATH is far from universally a medical consensus, is remand futile in this case? No, no. Is the State just going to say the same thing? It's medically controversial. Here's the Koselec record. No, I don't think so, Judge Hohen. And the reason is — and this is where I think the district court got off a little bit in its — the second point of its summary judgment ruling, talking about WPATH. The question right now at summary judgment is not whether WPATH is so compelling that it means Gibson wins. The question on summary judgment is simply whether there is enough in the record to create a genuine issue of material fact for some fact-finder to address more thoroughly. Your briefs concede that you all failed to present any evidence that anybody agrees with WPATH. I think it's page 21 of your summary. No. I don't think that's correct, Your Honor. In fact, we've cited the Fourth and Seventh Circuit decisions repeatedly, Devante and Fields v. Smith, as two circuit courts that agree with WPATH. Just reading your brief, I'm not trying to hold you to this. I'm just curious of your position. Gibson did not directly present evidence of the WPATH standard of care's universal acceptance. Correct. Universal. We've never said that it's universally accepted. It's a point of evidence, like many points of evidence that come before the courts on summary judgment, that a reasonable fact-finder could look at Gibson's situation and say, her gender dysphoria has not been cured by the first three legs of the treatment, mental health counseling, real-world experience, or hormones. She's still suffering, and her affidavits make very clear that she is. There is the leading standard, whether it's universally accepted or not, is clearly the leading treatise. It's the only treatise on transgender health that says that in some cases of gender dysphoria, aggravated cases, sex reassignment surgery, SRS, might be medically necessary. That's backed up by the DSM, which says the same thing. The DSM, of course, is cited in the policy by Texas, and Texas also cites the WPATH standard. So they've endorsed them to a certain extent. But a reasonable fact-finder could find, with the benefit of those authorities, Gibson's symptoms are not cured. But how does a reasonable fact-finder get past the, I think it was two Johns Hopkins doctors who testified in the Kosilak case, that WPATH didn't have a genuinely rigorous medical scientific process. It was kind of politically motivated. I'm not saying that's true, but that's part of the cost of the opinion. How do you get past that? That's absolutely correct, Judge Hobart. We're not moving for summary judgment. We're not asking the court below to rule in our favor. We're simply saying there's enough there that without a medically, without a medical evaluation of whether SRS is medically necessary for Gibson, there's an issue for trial. And that evaluation, that SRS evaluation, may tell us things that are important to the trial, would view differently because of Gibson's own peculiar circumstances. Kosilak was based on a trial record, a complete trial record. That's what needs to happen here. It needs to be an individualized medical decision. Gibson needs to be evaluated, and then we can take the next step. What would be different on remand here that didn't happen in Kosilak? Well, Gibson's own particular situation might be different. In Kosilak, as I said earlier, the First Circuit found that there were conflicting opinions by the medical professionals on whether SRS would cure her symptoms. Kosilak, by the way, had never tried to harm herself, and she had found some joy from the hormone therapy. Here, Gibson's situation, her drastic picture, the things she's gone through might create a very different record, but it might not. I mean, doctors could evaluate Gibson for SRS and say, it's not going to cure you, and then we're done. The case is over. I see that my time is up. Thank you very much. You've saved your full time for rebuttal. Thank you. Thank you. Mr. Sullivan? May it please the Court. When a state takes deliberate answer to the question by whether Dr. Green referred or said Gibson should have SRS evaluation. I have not seen that in the record, Your Honor. Dr. Livingston suggested that Gibson be allowed real life experience, and then Dr. Green said that that wasn't allowed in the prison system. All right. Well, I'm, no doubt I'm in error, but I'll check on it myself. When a state takes deliberate, reasonable steps to address a prisoner's condition, there can be no Eighth Amendment violation, since no specific treatment is mandated by the Constitution. This is especially true where the state is merely declining to offer an experimental and controversial treatment that's not workable in the prison context. First, the state's treatment policy is not repugnant to the Constitution. Gibson relied here at the summary judgment stage on the WPATH guidelines to make this argument, but that fails for five reasons, highlighted throughout the Koselleck opinion. But one, as we've set it forth in our brief, they're not mandatory on the state. Even the APA has acknowledged that, that there has to be room for states to have policies. Second, they're not universally accepted. That's clear. Three, they're flexible, and even by their own terms, then can be adapted to state law. Four, they're not workable in the prison context. And finally— Now, at the summary judgment hearing, as I understand it, you didn't present evidence of why they're not workable or why there are safety concerns, et cetera, et cetera. Is that correct? That's correct, Your Honor. So why are we talking about it here? We're dealing with one summary judgment proceeding, one summary judgment record. Yes, Your Honor. So, Your Honor, as we noted in our brief, we were offering those rationales to the court. But, you know, that's fine if you had evidence to support it. That's the problem we have with this record, that there's no safety concerns shown. There's no discussion of why this lifestyle experience, it takes a year, why that wouldn't work in prison, et cetera. We've got a big case riding on a mighty thin record. Well, Your Honor, two points. One, it would have been the plaintiff's burden to put forth evidence that there was some competent summary judgment evidence to refute what we were saying and to prove her point. Wait a minute. You're saying the plaintiff had the burden to show it wasn't a safety concern? To show that it was going to be, this was something that the State had to do or a reason that it would be repugnant to the conscience for the State not to do it. The plaintiff didn't do that because the only thing— You're saying the plaintiff is responsible for proving it would not have been a safety concern? For— The State doesn't have that burden. The plaintiff has the burden to show that this is going to be repugnant to the Constitution—sorry, to the conscience. You're not answering my question. The— Isn't it the State's burden to raise these institutional concerns and safety concerns and penological concerns? It would—if the plaintiff had raised anything that brought those to light, it would be. But, Your Honor, the— Is your point that there are sort of two different issues at play? One is what is medically necessary, what is the medical consensus? And two, notwithstanding the medical consensus, is there a safety problem? Yes, Your Honor. Okay. And your point is what then? That the State—or that the plaintiff had the burden to do both or just the first? Just the first. To raise the issue in order for—then the State would have shown that there was, you know, a rational basis for invoking such a policy or for having such a policy in the first place. Can I ask—I have a question because this is—I think we've all said this was very procedurally an odd case, not fully litigated below. Is that because, as I understand it, the State never asked for summary judgment on the merits? From what I can tell, the State only asked for summary judgment on immunity grounds. So I believe that's correct, Your Honor. So, in a sense, that might be a basis for reversal, except that I don't see Gibson making that argument, that you lost on your immunity defenses and that's all that's present. Right. Has—I mean, two things. Hasn't made that argument. And, again, I think the reason that we've offered kind of additional explanation in our brief is just for the Court to have any alternative basis to affirm in this case, the district court. The—I think— Isn't it correct that for us to have an alternative basis to affirm, there has to be something in the record that allows that? In the record, Your Honor, or, I think, in publicly available documents or in even within—so the WPATH guidelines here themselves— Publicly available documents we're supposed to take judicial notice? Yes, Your Honor. Well, or, in this case, the WPATH guidelines that were offered by the plaintiff themselves kind of set forth—we show that there—you wouldn't be able to have, for instance, a real-life experience that went on for one year prior to any SRS, right? So the guidelines themselves also note, and I believe that's at 342 of the record, they note that SRS is controversial. And so if this procedure is controversial in itself, then there would be no grounds for saying that it would be repugnant to the conscience in order for the State to not offer that. Second— On the judicial notice question, I know Gibson has asked us to take judicial notice of various documents that weren't before the Court. I don't think you all are asking for that, right? No, Your Honor. We just cited the— You're willing to rest on the record of WPATH alone not being enough? Yes, Your Honor. Okay. The treatment policy here, though, as Judge Smith, I think, pointed out, can't be a matter of deliberate indifference. Again, according to those WPATH guidelines, SRS is not a viable option in the prison context. Inmates can't abide by the guidelines to live as the opposite sex. Also— But in fairness to Judge Barksdale's questions, those weren't presented by the State below, right? That's correct. I take it your focus to be it's about the lack of consensus, and you're willing to sort of win on that and essentially forfeit the safety argument. Yes, Your Honor. And just as a matter of law, that as this Court has held, the treatment that is provided doesn't have to be the best. That's—the money can buy. That's Mayweather. It doesn't have to cure whatever's going on. That's Norton that wasn't addressed in the plaintiff's reply brief. So the State can choose among treatment options that are known to be effective and that are known not to be controversial. I think you cite Ruiz for the proposition that the Eighth Amendment doesn't match Medicare and Medicaid. Yes, Your Honor. That is the relevant standard. Pardon my ignorance. Do Medicare and Medicaid provide for SRS? I don't believe so. I think there's been some back and forth on that, and I know that at least in California there was some debate on whether or not the State was going to have to do that under their Medicaid—Medicare programs. But I don't believe—as just kind of nationwide, I don't believe that it does. My understanding of the record, but you can correct me if I'm wrong, is that Mr. Gibson is asking to live—be assigned to a female prison. Is that right? I don't recall if he's specifically asking for that. That would probably be part of the SRS evaluation and treatment protocol. Because, I mean, that would be—I thought that the record showed that, but even if it wasn't, I mean, that would be a—that is required by the medical guidelines for reassignment surgery, isn't it, to live in that kind of environment? Yes, Your Honor. To see how it works out? Yes, Your Honor, that you would live as the opposite gender. I mean, by definition, the State isn't going to allow that. It's a prison, right? That's correct, Your Honor. Or is that your position? I'm not trying to state your position. That is correct. And I think that's why the other circuits, you know, First Circuit in Koselleck, the Tenth Circuit in the Drewley case, as well as the Eighth Circuit, have recognized these types of penological justifications for not allowing SRS. I'd ask the opposing counsel if there's anything in the record indicating that any State has ever provided this, or how often. Do you happen to know, has Texas ever provided SRS to any inmate? Not to my knowledge, Your Honor. Any other State ever provided this to an inmate? The—I believe in the Rosati case that they may have, they were going to remand it in that case because it had been—a physician assistant had made an initial determination that the patient wasn't eligible for SRS, I believe, and they were going to kick it back in that one. That was just a couple of years ago, so. But even—that's the Ninth Circuit, and even there they didn't address other reasons that a State might not allow SRS, so. Would you address—this is a facial challenge, right, to the State's policies? Yes, Your Honor. So, wouldn't a facial challenge—wouldn't Mr. Gibson have to show that there's no set of circumstances in which the State's policy would be valid? That's correct, Your Honor. And which—maybe that helps answer Judge Barksdale's line of questioning, that we were offering some rationales for, again, what the State believes here and what the First Circuit upheld in Koselec, what the Eighth Circuit looked at in Ferrier, that there would be penological justifications for not allowing this type of— Now, when you say the State believes this, that's what Texas believes? Yes, Your Honor. But you don't have one shred of evidence in the summary judgment record to that effect? That's correct, Your Honor. At the—at the stage that it was at, given the evidence that had been put forward, then that was not necessary to introduce into the record at that point. The plaintiff had not carried the burden of proof that there was a question here as a matter of conscience. And so, since the policy here doesn't shock the conscience, and it is effective, especially when paired with the psychiatric care that the State has provided over and over to the prisoner, then there is no Eighth Amendment violation. Are there no further questions? All right. Thank you, Mr. Sullivan. All right. Mr. Brody, you've saved time for rebuttal. Just a few points. Judge Ho, with respect to your earlier question to me, and then again to Mr. Sullivan about whether any State had allowed SRS in its prison systems, Mr. Sullivan's reference to Rizzotti reminds me that I do believe California has allowed SRS for a few inmates. I don't have a cite for that, but I believe following—after the Rizzotti case, that California is the first State to have allowed that. Do you happen to know when? I don't know when. I could tell you when the Rizzotti case was. Because Rizzotti was, I think, just a few years ago. Yeah, and it's cited in the briefs. I guess what I'm wondering is, what we're talking about here is not—this is not a medical insurance case or a Medicare case. This is cruel and unusual punishment. Is it possible for something to be cruel and unusual when—to deny something as cruel and unusual when it's only recently been provided for the first time in history? You see what I'm getting at? Yes, I do. This is a constitutional case. I think it's certainly a factor, right? So, when one looks at deliberate indifference, the State has to be aware of the risk, and they have to act in disregard of it. Part of deciding whether it's medically necessary may be the evolving consensus, the evolving standards of decency, of classic under Eighth Amendment law. So, it may be that more time will lead to a clearer sense of things.  I think, in this case, the only way out of this case that I can see is if the State were to determine, if this Court were to rule, that SRS for Gibson was not medically necessary. If it's medically necessary, by definition, medically necessary means it needs to happen in order to take care of this medical need. If it's medically necessary, something has to be done about it. At least there has to be an evaluation for it. But is it medically necessary when it's so hotly contested? It can be, sure. I mean, the first diagnosis of a problem, controversial diagnosis, can be. But that's an issue for a fact finder, right? That's an issue for a trial, like in COSELEC, like in Fields. Fields, they dealt with a hormone therapy problem. But we're not asking that Gibson wins. We're not asking that Gibson gets SRS. We're saying there's enough here to go forward. Along that line, address the fact that this is a facial challenge, vis-a-vis what the State was required to put into the record. It's a facial challenge and an as-applied challenge. It's been that way throughout. Facially, the State is correct that there'd be more requirements to negative its unconstitutionality in every respect. An as-applied is simply as-applied to Gibson, and that's really what we're focusing on here. What this writ case really comes down to is the simple proposition, whether Gibson should get an evaluation to determine whether SRS is medically necessary to cure her gender dysphoria. That's all, not whether she should get SRS. In that context, the State then, of course, can raise the security concerns it wants to. But I think those concerns are a little bit overblown, Judge Barksdale, and I know you asked about them directly, because the State is already dealing with this problem. We're not opening a Pandora's box here by saying once you allow SRS, you're going to have to deal with transgender inmates across mixed genders in your prison system. People are already being arrested and incarcerated every day who are transgender, and they're now in the prison system. Now, once again, you know, this is not a philosophy class, and I'm not being sarcastic, Counsel. I'm just saying, I suppose I'm sort of from the old school to think if it's not in evidence, we really don't talk about it. I thought that was the whole point of building a record. No, I think it is, Your Honor, and I'm just trying to follow on the thread of the State argued that it raised some of these concerns because of broader concerns for a facial challenge, then if they raised them, I thought it was fair game to respond to that. Right, and I thought you had basically said we're not worried about facial, we're worried about as applied. Brett, there is one other piece of summary judgment evidence in the record, and this is in the record, to your point, Judge Barksdale. Docket number 67. It's referenced in the judge's summary judgment opinion as well. Docket number 67 was a motion by Gibson for the court to take into account on the motion for summary judgment an articulation by the spokesperson for the Texas Department of Criminal Justice that SRS was not allowed because it was viewed as, quote, an elective, close quote, surgery. That piece of evidence never taken into account by the judge in ruling on summary judgment. On this sparse record, it's particularly important because if that's the rationale that the state used to adopt this policy, that's not a rationale that Gibson's concerns of medical necessity are already taken care of elsewhere. That's a different concern, and that concern echoes throughout the state's briefs. That needs to be explored below. The district judge didn't recognize it, didn't address it on summary judgment, then after granting summary judgment in the unusual posture that Judge Barksdale noted, said that motion is now denied. Well, that motion should have been considered in the course of the way through summary judgment, not denied afterwards. I thank you for your time. What do you make of the fact, this may or may not be relevant, but the Supreme Court has, for decades, described sex as immutable, much like race is immutable. What do you make of what we should do with that principle, given the dispute we're having in this case? So I think, with all due respect, I think that principle is not really relevant to this case. The best thing that could happen in this case would be for Gibson to be treated like any other inmate with a medical condition, her condition treated, evaluated, and taken care of under the Eighth Amendment, regardless of the maybe unusual posture in which her condition arises. I guess what I'm getting at is you've got the First Circuit and perhaps others questioning the credibility of WPATH. You've got a decades-long understanding, at least as a constitutional matter, according to the Supreme Court, that sex is immutable. It seems like you have a pretty steep hill to climb to prove that all that should be ignored and it's now cruel and unusual not to provide SRS today in 2018. I think you raise a good point, Judge Owen. It would take me on a long philosophical discussion we could have maybe over a couple of beers sometime. So sex is immutable, but treatment of sexual conditions medically necessary to cure a patient's ills is not immutable. That's not the same thing. And so it may be that there are all sorts of rules that says whatever happens to Gibson, we're not going to ever call her Vanessa Lynn Gibson, we're going to call her Scotland Gibson and she's going to be identified as a male and she's going to be housed with men because sex is immutable, fine, but she still has a medical condition right now that's threatening her life, and that needs to be taken care of under the Eighth Amendment. Thank you very much. It's been a pleasure. Thank you, and we appreciate your willingness to take the appointment and we also very much appreciate the contribution of the University of Virginia School of Law Appellate Litigation Clinic. Thank you, Your Honor. Your case is under submission and the court will take a brief recess.